UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| THE ESTATE OF CHARLES STEPNEY, et al., | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) Case No. 10-cv-8266<br>) |
| UMG RECORDINGS, INC., a California Corporation, | ) Judge John W. Darrah<br>)<br>) |
| Defendant. | )<br>)<br>)<br>)<br>) |

## **MEMORANDUM OPINION AND ORDER**

Plaintiffs, The Estate of Charles Stepney (the "Estate") and Eibur Music, Inc. ("Eibur"), as Trustee for the Stepney Legacy Trust, filed a Complaint against UMG Recordings, Inc. ("UMG"), alleging Breach of Contract (Count I); Breach of Oral Contract (Count II); Breach of Fiduciary Duty (Count III); Accounting (Count IV); Unjust Enrichment (Count V); and Constructive Trust (Count VI). Before the Court is UMG's Motion to Dismiss Counts III, V, and VI and to dismiss Eibur from the lawsuit for lack of standing. Plaintiffs have not filed a response. Plaintiffs' counsel participated by telephone at a status hearing on March 1, 2011, when a briefing schedule was set and embodied in a minute order. (*See* Dkt. No. 12.) UMG filed a reply on April 12, 2011.

## BACKGROUND

The following facts are drawn from Plaintiffs' Complaint and are accepted as true for purposes of the Motion to Dismiss. *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010). Chess Records was a Chicago-based record label active in the 1950s through the early 1970s. (Compl. at 1; ¶ 4.) Charles Stepney ("Stepney") began his career as a musician at Chess Records in the 1960s. (Compl. at 2.) Over the course of the years, he was promoted to music supervisor, arranger, and session manager. (*Id.*) In 1968, Stepney was promoted to head producer at Chess Records. (*Id.*) On March 1, 1968, Stepney and Chess Records entered into an exclusive producer agreement (the "Producer Agreement") pursuant to which Chess Records agreed to employ Stepney "as a producer for the purpose of producing master recordings from which phonograph records can be manufactured." (*Id.* ¶ 9; Ex. 1 at ¶ 1.)

Chess Records agreed to pay Stepney a royalty amounting to:

> Three Percent (3%) of the wholesale price [less certain expenses] for ninety percent of all 33 1/3 rpm long playing phonograph records (exclusive of pre-recorded tapes) sold within the United States under the authority of Company, on both sides of which is embodied only performances produced hereunder, and which are paid for and not subject to return; and one-half (1/2) of such royalty with respect to corresponding pre-recorded tapes.

(*Id.* ¶ 9; Ex. 1 at ¶ 4(A)(i).) With respect to phonograph records sold outside the United States, Stepney would receive one-half of the royalties specified above. (*Id.* ¶ 9; Ex. 1 at ¶ 4(B).) The Producer Agreement provides that the "validity, construction and effect of this agreement, and all extensions and modifications thereof, shall be construed

2

in accordance with the Law of the State of New York applicable to agreements wholly to be performed therein." (*Id.*; Ex. 1 ¶ 14.)

The Producer Agreement had an initial one-year term, extendable for one more year at Chess Records' option. (*Id.* ¶ 11.) Chess Records exercised its option to extend the agreement for one year to cover the period March 1, 1969 through March 1, 1970. (*Id.* ¶ 12.) Subsequently, Chess Records and Stepney orally agreed to extend the Producer Agreement for an additional two years to cover the period March 1, 1970 through March 1, 1972. (*Id.* ¶¶ 33, 63.) Stepney produced recordings for Chess Records under the original Producer Agreement and the oral extension. (*Id.* ¶¶ 13, 34.) Though the Producer Agreement provided that Stepney would receive royalty statements twice a year, he received only two royalty statements from Chess Records; one for the period ending June 30, 1972, and another for the period ending June 30, 1975. (*Id.* ¶¶ 10, 14.) Stepney passed away on May 17, 1976. (*Id.* ¶ 16.) His rights under the Producer Agreement and its oral extension passed to his Estate. (*Id.*) In 2008, Stepney's wife passed away, leaving his three children as the successor in interest to the Estate and the Producer Agreement as extended. On March 19, 2009, Stepney's three children created the Stepney Legacy Trust (the "Trust") over certain property and named Eibur as the Trustee. (*Id.* ¶ 18.) The Trust assumed the Estate's rights under the Producer Agreement and its oral extension. (*Id.* ¶¶ 18, 36.)

UMG acquired the Chess Records catalogue and has sold recordings produced by Stepney. (*Id.* ¶¶ 19-20.) On June 18, 2010, the Estate sent a notice of default to UMG, stating that UMG had failed to pay royalties due to the Estate under the Producer

Agreement and its oral extension. (*Id.* ¶ 25; Ex. 5.) The notice of default stated, in part: "UMG Recordings, Inc. owes the Estate of Charles Stepney all executory duties owed by Chess Records as the lawful successor in interest." (*Id.* Ex. 5 at 1 (capitalization omitted).)

## LEGAL STANDARD

A motion under Rule 12(b)(6) challenges the sufficiency of the complaint. *Christensen v. Cnty. of Boone*, 483 F.3d 454, 458 (7th Cir. 2007). Under the federal notice pleading standards, "a plaintiff's complaint need only provide a short and plain statement of the claim showing that the pleader is entitled to relief, sufficient to provide the defendant with fair notice of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (internal quotations omitted). When considering a motion to dismiss under Rule 12(b)(6), the complaint is construed in the light most favorable to the plaintiff; all well-pleaded factual allegations are accepted as true, and all reasonable inferences are construed in the plaintiff's favor. *Id.* However, a complaint must allege "enough facts to state a claim to relief that is plausible on its face" to survive a motion to dismiss. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 547 (2007). For a claim to have facial plausibility, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009). Thus, "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Further, the amount of factual allegations required to state a plausible claim

for relief depends on the complexity of the legal theory alleged. *Limestone Dev. Corp. v. Vill. of Lemont*, 520 F.3d 797, 803 (7th Cir. 2008).

Exhibits attached to the Complaint are considered "part of the pleading for all purposes." Fed. R. Civ. P. 10(c); *see also Witzke v. Femal*, 376 F.3d 744, 749 (7th Cir. 2004). The "well-settled rule" is that "when a written instrument contradicts allegations in a complaint to which it is attached, the exhibit trumps the allegations." *N. Indiana Gun & Outdoor Shows, Inc. v. City of South Bend*, 163 F.3d 449, 454 (7th Cir. 1998).

## ANALYSIS

UMG argues that Eiber, as Trustee for the Stepney Legacy Trust, lacks standing to pursue the instant lawsuit. In their Complaint, both the Estate and Eibur assert entitlement to royalty payments pursuant to the Producer Agreement and its oral extension. The Complaint further alleges that Stepney's rights passed upon his death to the Estate in 1976. But in 2009, Stepney's children created a revocable trust of property (the Stepney Legacy Trust), which includes, among other things, Stepney's rights under the Producer Agreement and its oral extension. (Compl. ¶¶ 16, 18, 36.) UMG argues that the ambiguity as to whether the Estate or Eibur is the proper party is resolved by the 6/18/10 Notice of Default that is attached to the Complaint in which Plaintiffs' counsel stated that UMG "owes the Estate of Charles Stepney all executory duties owed by Chess Records as the lawful successor in interest." (Compl., Ex. 5 at 1.) Therefore, UMG argues, it is the Estate that has standing to sue. This letter, although perhaps suggesting ambiguity as to the proper claimants, does not require dismissal of Eibur's plausible claim based on Eibur's actual allegations set out above. As pled, both the

Estate and the Trust are claiming an interest in the royalties; discovery will assist in resolving this issue.

With respect to Count III (Breach of Fiduciary Duty), Plaintiffs allege that "[u]nder the terms of the . . . Agreements, Defendant assumed obligations and duties to collect royalties on Plaintiffs' behalf and disburse those royalties to Plaintiffs on a semiannual basis." (Compl. ¶ 22.) Under Illinois law, "a fiduciary duty arises either as a matter of law or by meeting a 'special circumstance' test." *Crichton v. Golden Rule Ins. Co.*, 358 Ill. App. 3d 1137, 1149 (5th Dist. 2005). As a matter of law, the fact that Plaintiffs entered into a contract with UMG does not give rise to a fiduciary duty on the part of UMG. *State Sec. Ins. Co. v. Frank B. Hall & Co.*, 258 Ill. App. 3d 588, 597 (1st Dist. 1994) ("The mere fact that business transactions occurred or that a contractual relationship existed is insufficient to support . . . a finding" of a fiduciary relationship.) Plaintiffs further have alleged no "special circumstance" that would warrant a finding of a fiduciary relationship. Therefore, UMG's Motion to Dismiss Count III is granted.

In Count V, Plaintiffs brings a claim for unjust enrichment, under which they allege that "Stepney delivered . . . recordings to Chess Records under an oral agreement with Chess Records that he would be compensated according to terms comparable to those contained in the Producer Agreement." (Compl. ¶ 63.) UMG argues that Plaintiffs' claim should be dismissed because Plaintiffs' allegations that express contracts govern the royalty payment dispute preclude recovery under an unjust enrichment theory. (Br. at 9-10.) Although Plaintiffs may not recover under a theory of unjust enrichment where there is an adequate remedy at law, Plaintiffs may plead both breach of contract

and unjust enrichment in the alternative. *See* Fed. R. Civ. P. 8(d) (allowing alternate and inconsistent claims in pleadings); *Horowitz v. Sonnenschein Nath & Rosenthal LLP*, 399 Ill. App. 965, 947 (1st Dist. 2010) ("But where a party pleads breach of contract, he also can plead unjust enrichment in the alternative."); *See also Cromeens, Holloman, Sibert, Inc. v. AB Volvo*, 349 F.3d 376, 397 (7th Cir. 2002) ("[A] party is allowed to plead breach of contract, or if the court finds no contract was formed, to plead for quasi-contractual relief in the alternative.").

In Count VI, Plaintiffs bring a claim for Constructive Trust that they base on the "terms of the Agreements" and Defendant's alleged breach of a fiduciary duty. A constructive trust is an equitable remedy, not an independent cause of action. *People ex rel. Daley v. Warren Motors, Inc.*, 136 Ill. App. 3d 505 (1st Dist. 1985), *aff'd*, 114 Ill.2d 305 (1986). Therefore, the claim for constructive trust is dismissed without prejudice to Plaintiffs' properly pleading a claim that warrants this imposition of constructive trust as relief.

## CONCLUSION

For the reasons set forth above, UMG's Motion to Dismiss [8] is granted as to Counts III and VI and denied as to Count V. UMG's Motion to Dismiss Eibur [8] for lack of standing is denied.

Date: **MAY 2 6 2011**

_____
JOHN W. DARRAH
United States District Court Judge